# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America and the State of California, *ex rel.* Steven Higgins,

        Plaintiffs,

v.

Boston Scientific Corporation,

        Defendant.

Case No. 11-cv-2453 (JNE/SER)

**ORDER**

---

Daniel R. Miller, Joy P. Clairmont, William H. Ellerbe, and Jonathan Z. DeSantis, Berger Montague PC, 1818 Market Street, Suite 3600, Philadelphia PA 19103, and E. Michelle Drake, Berger Montague PC, 43 Southeast Main Street, Suite 505, Minneapolis MN 55414 (for Relator Steven Higgins); and

Fredrick Robinson and Lesley Reynolds, Reed Smith LLP, 1301 K Street Northwest, Suite 1100 – East Tower, Washington DC 20005, Caitlin Chambers, Reed Smith LLP, 811 Main Street, Suite 1700, Houston TX 77002, and Allison M. Lange Garrison, Norton Rose Fulbright US LLP, 60 South Sixth Street, Suite 3100, Minneapolis MN 55402 (for Defendant Boston Scientific Corporation).

---

This case is what happens when you cross an approach to discovery à la Inspector Clouseau with a corporate lawyer caricature found in cartoon caption contests. Even though modern discovery and pretrial procedures are in place to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958), this case has tested the definitions of "fair," "contest," "basic," "issues," "facts," "disclosed," "fullest", "practicable," and "extent." Even then, the Court might be underestimating what would be left unchallenged. Not even the one-eyed man would be king over this disaster.

Clearly, the Court is not enamored with the parties' conduct to date. This case has dragged on and, despite the Court's strong guidance and various rulings along the way, the parties have been unable to engage in fulsome and fair discovery. While both parties share the blame as to certain discovery woes, Defendant Boston Scientific's discovery actions throughout this case have tiptoed the line of permissible, albeit discouraged, behavior. Now, with the discovery end in sight, Boston Scientific has crossed the line into sanctionable conduct. It must be awarded its just deserts for these efforts.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

### A.  Courtship: Complaints, Motions to Dismiss, and Leave to Amend

Relator Steven Higgins, MD, initiated this *qui tam* action on August 26, 2011 on behalf of the United States and the State of California under the False Claims Act ("FCA") and the California False Claims Act ("CFCA"). (Compl. ¶ 1, ECF No. 1). Relator alleged that Boston Scientific engaged in two distinct schemes: (1) selling defective cardiac defibrillator devices under the names Cognis and Teligen; and (2) providing kickbacks. (Compl. ¶ 2). Almost five years later, the United States and the State of California declined to intervene and, on May 6, 2016, Relator was permitted to pursue this action on their behalf. (ECF Nos. 44, 47).

Relator thereafter filed his Amended Complaint on October 7, 2016. (Am. Compl., ECF No. 61). The Amended Complaint alleged one fraudulent scheme: that Boston Scientific sought Food and Drug Administration (FDA) approval and subsequently sold defective cardiac defibrillator devices under the names Cognis and Teligen. (Am. Compl. ¶ 2). Boston Scientific moved for dismissal of Relator's suit. (ECF No. 63). In deciding

that motion, the Court first addressed whether the Court had subject matter jurisdiction with respect to the FCA's public disclosure bar, concluding it does. *United States ex rel. Higgins v. Boston Sci. Corp.*, 2017 WL 3732099, at *3–*4 (D. Minn. Aug. 29, 2017).[1] The Court next found that while Relator appeared to state a viable claim under Rule 12(b), he failed to satisfactorily plead his fraud claim with particularity as required by Rule 9(b). *Id.* at *4–*10. Relator's Amended Complaint was dismissed but he was permitted to amend his complaint to cure the Rule 9(b) pleading deficiencies. *Id.* at *10.

Relator filed his Second Amended Complaint on September 19, 2017, alleging that Boston Scientific engaged in a fraudulent scheme whereby it sought FDA approval and subsequently sold defective cardiac defibrillator devices under the names Cognis and Teligen. (Sec. Am. Compl., ECF No. 98). Again, Boston Scientific sought dismissal of the complaint, arguing that Relator failed to plead his fraud claims with particularity. (ECF Nos. 103, 106). The Court rejected that argument, finding "Higgins has particularly pled fraud in how Boston Scientific allegedly misled the FDA." *United States ex rel. Higgins v. Boston Sci. Corp.*, 2017 WL 6389671, at *1 (D. Minn. Dec. 13, 2017).[2]

Next, the Court set a pretrial scheduling conference and the parties were directed to jointly prepare a Rule 26(f) report. (ECF No. 121). As the Court has already summarized:

> The parties disagreed on nearly every part of the discovery plan and schedule. (ECF No. 130 *passim*). Following the pretrial conference, this Court directed the parties to meet and confer further in an attempt to reach an agreement on a pretrial schedule that met all parties' needs in lieu of a wholly court-imposed schedule. (ECF Nos. 134, 135). The parties complied and developed a pretrial schedule. (ECF No. 135). The parties also agreed that regular

---

[1] Also available at ECF No. 97 at 5–8.
[2] Also available at ECF No. 117.

telephone status conferences would "keep discovery in this case moving forward efficiently." (ECF No. 135, at 1). This Court incorporated the parties' agreed-upon deadlines in a pretrial scheduling order and set monthly telephonic status conferences. (ECF Nos. 137, 138).

*United States ex rel. Higgins v. Boston Sci. Corp.*, 2018 WL 5617565, at *1 (D. Minn. Oct. 30, 2018).[3]

Relator then sought leave to file a third amended complaint, seeking to add a claim under the California Insurance Frauds Prevention Act ("CIFPA"). (ECF No. 145). Boston Scientific argued the new claim under CIFPA was futile for three reasons: (1) Relator did not file the proposed Third Amended Complaint under seal as CIFPA requires; (2) CIFPA's statute of limitations bars Relator's claim; and (3) Relator's claim is not plead with particularity as required by Rule 9(b). The Court rejected all of Boston Scientific's futility arguments, but ultimately found that Boston Scientific would be unduly prejudiced by the amendment, so the motion was denied. *United States ex rel. Higgins v. Boston Sci. Corp.*, 2018 WL 5617565, at *2–*8.

### B. The Honeymoon Phase: Discovery's Gentle First Touches

As noted above, the Court set monthly telephonic status conferences—to be preceded by monthly meetings between the parties and a joint status report—to monitor discovery in this matter. (ECF Nos. 138, 182).

The parties began with their first monthly status report on June 11, 2018. (ECF No. 139). The parties were "happy to report that they continue to work through outstanding discovery issues in a cooperative and productive way." (ECF No. 139, at 1).[4] Of note, the

---

[3] Also available at ECF No. 177.
[4] Unless otherwise noted, references to page numbers in ECF documents are to the ECF pagination.

parties were still meeting-and-conferring on June 11 regarding Relator's April 3, 2018 requests for production. (ECF No. 139). The parties were discussing electronically stored information ("ESI") search terms and custodians. (ECF No. 139).

As of July 9, 2018, the parties were still discussing the April 2018 requests for production, with Boston Scientific having raised further concerns on July 3, six days before its production deadline. (ECF No. 142). Likewise, the parties were still discussing ESI search terms and custodians. (ECF No. 142). This process continued through August 14, 2018. (ECF No. 151). And it still continued on September 13, 2018. (ECF No. 161). At the least, Boston Scientific had served requests for production on June 19, but like Relator's discovery, the parties were engaged in a meet-and-confer process regarding the responses. (ECF No. 161). Relator agreed to "substantially complete" his production three weeks in advance of his noticed deposition. (ECF No. 161).

On October 9, 2018, the parties finally admitted they were at an impasse regarding one discovery matter: Relator's relevancy objections to Boston Scientific's June 2018 requests for production. (ECF No. 172). This dispute had carry-over effects as to the timing of Relator's deposition. (ECF No. 172). The parties were back to working in a "cooperative and productive way" come November 12, 2018. (ECF No. 178). As such, the Court cancelled the monthly status conference. (ECF No. 179).

For their December 2018 status update, the parties indicated they had finally agreed upon ESI search terms and custodians after approximately six months of meeting and conferring. (ECF No. 180). Thus, Boston Scientific anticipated it would "begin producing documents pursuant to [the parties'] agreement in the near future." (ECF No. 180). Relator

requested that the Court set a deadline on the production, (ECF No. 180), but the Court declined to impose any internal deadlines so as to not interfere with the parties' discovery.

For the next three months, the parties indicated they were working through discovery. (ECF Nos. 183, 188, 190). In January, the parties were finalizing an issue related to metadata for Relator's document production, (ECF No. 183), that arose three months prior in October 2018, (ECF No. 172). Meanwhile, Boston Scientific was beginning to review documents that were "potentially responsive" to Relator's June 2018 requests for production and expected to begin its "rolling production" by the end of January. (ECF No. 183). To speed this process up, Relator proposed a priority list for the ESI custodians. (ECF No. 183). Boston Scientific produced a privilege log dating back to documents produced in May 2018. (ECF No. 183). The parties were still meeting-and-conferring one remaining ESI search term. (ECF No. 183). That conversation was still ongoing in February 2019, but the parties had finally agreed upon a set of 28 custodians and priority order. (ECF No. 188). Boston Scientific produced responsive documents related to 2 of the 28 custodians on January 31. (ECF No. 188). In March 2019, the parties had finally resolved the last remaining ESI search term dispute but were now discussing the reasonableness of Boston Scientific's searches. (ECF No. 190). Boston Scientific made productions relating to 18 of the 28 custodians by March 12, 2019. (ECF No. 190). Relator recently served a second set of requests for production and a revised first set of interrogatories. (ECF No. 190). As a result of the parties' representations, the Court cancelled the status conferences for January, February, and March 2019. (ECF Nos. 184, 189, 191).

### C. The Breakdown in Communication: Discovery Gets Contentious

Through the March 2019 joint status letter—that is, after approximately one full year of discovery—the parties appeared to be functioning as well as could be expected of a *qui tam* matter with its inherently asymmetrical discovery aimed at a deep-pocketed corporate defendant. But the April 2019 status letter shattered that illusion. The April 2019 status letter showcased the complete breakdown of discovery and, through hindsight, shed light on the discovery failures leading to this point.

As of April 5, 2019, Relator believed he had substantially completed his discovery productions to Boston Scientific. (ECF No. 192, at 1). Nearly the entirety of the letter detailed a dispute the parties had been hemming and hawing on since Relator's April 2018 requests for production. (ECF No. 192). Essentially, there was a dispute about whether and to what extent Boston Scientific would perform non-custodial searches of its internal database related to FDA reports concerning defects in the defibrillator devices. (ECF No. 192). To date, Boston Scientific had not produced *any* non-custodial searches of the internal database, known as Lighthouse, to Relator; Boston Scientific had only produced documents that happened to be revealed in the custodial searches. (ECF No. 192). At the monthly conference, the Court reprimanded the parties for failing to properly utilize the status letters as this was a dispute that should have been raised much earlier, particularly given its critical importance to the case. The Court indicated motion practice would be heard on an expedited basis.

The Court heard Relator's motion to compel on April 26, 2019. (ECF No. 202). After hearing arguments, the Court issued an immediate oral order. (ECF No. 202; Tr. of

Apr. 26, 2019 Mot. Hrg., ECF No. 209). The Court found the information sought from the Lighthouse database to be both relevant and proportional. (Apr. 26, 2019 Tr. 28:17–30:23). The Court found Boston Scientific had "taken the parties' discovery protocols to the logical extreme" and "contort[ed] the proportionality limits embraced by Rule 26." (Apr. 26, 2019 Tr. 29:24–30:6). Boston Scientific was ordered to produce "as many documents as are reasonable" with respect to 1,200 identified events within two weeks. (Apr. 26, 2019 Tr. 32:21–33:4). The Court also expressed dissatisfaction at the parties' discovery efforts to date, including their use of the monthly status conferences. (Apr. 26, 2019 Tr. 30:24–33:16). The Court warned the parties not to engage "in the big law firm meet and confer things to death" process, Relator delaying deposition notices, and Boston Scientific "sandbagging" its response to the discovery order. (Apr. 26, 2019 Tr. 32:1–33:16). The Court again warned the parties that it would not extend discovery deadlines in this matter. (Apr. 26, 2019 Tr. 31:1–33:16).

In their May 2019 status letter, Boston Scientific and Relator devoted almost *four* single-spaced pages to fight about *two* pages that Relator produced following a search to find the metadata for a document he already produced. (ECF No. 207). Essentially, Boston Scientific cried foul, demanding either more discovery or additional deposition time, because Relator came across two previously undisclosed pages while attempting to assuage Boston Scientific's metadata demands. (ECF No. 207). The parties had a much less idiotic dispute for the Court related to Relator's over-use of subparts in his interrogatories. (ECF No. 207). Ultimately, the Court limited Relator to 37 total interrogatories and left it to the parties to sort out counting interrogatories and their subparts.

Before the next status conference, the parties raised an urgent dispute related to the deposition of Sumeet Dham, a former Boston Scientific employee central to the design of the Cognis and Teligen devices. (*See* ECF No. 212). Relator served a deposition subpoena on Dham and Dham's counsel indicated he would sit for 7 hours of testimony. (ECF No. 212, at 2). Boston Scientific then demanded that half of the deposition time, 3.5 hours, be allocated to it. (ECF No. 212, at 2). Relator asked the Court to extend the time to depose Dham to accommodate Boston Scientific's request, while Boston Scientific insisted on limiting the deposition to 7 hours and splitting the time equally between it and Relator. (ECF No. 212, at 3–5). The Court, via email, directed that Relator could use the full seven hours, if necessary, to depose Dham and Boston Scientific could request additional time at the upcoming status conference should it believe it was needed. (*See* ECF No. 219, at 9). The Court strongly encouraged the parties to be efficient in their use of time at Dham's deposition and warned that it would not look favorably upon any unwarranted objections or duplicitous questioning.

Around the same time, Relator filed another motion to compel. (ECF No. 213). Relator sought all presentations that Boston Scientific made to federal or state governments during the course of investigating this *qui tam* lawsuit. (ECF No. 214).

Before the motion to compel was heard and decided, the parties submitted their status letter for June 2019. (ECF No. 219). The parties raised five issues: (1) communications with deponents during breaks in the depositions; (2) Boston Scientific's interrogatory responses; (3) scheduling of fact depositions; (4) allocation of deposition time; and (5) the upcoming motion to compel. (ECF No. 219). At the onset, the

Court directed the parties to submit a discovery outline for how the parties intended to complete discovery in time, particularly the impending heap of depositions. (ECF No. 222). The Court provided guidance on the parties' deposition communications and time allocation and made itself available should any breakdowns occur during depositions. Another issue was brought up regarding Boston Scientific's June 14, 2019 privilege log. The Court indicated it should be able to make privilege rulings from the privilege log itself, so it directed the parties to include sufficient information in their privilege logs. Finally, the Court urged the parties to resolve the pending motion to compel regarding government presentations.

On June 25, 2019, the parties submitted their itinerary outlining the remainder of discovery. The parties set timelines for remaining document production, scheduling of 34 depositions between June 27 and July 30, and third-party discovery.[5] The parties also noted a dispute related to privilege logs would be subject to a motion to compel should they be unable to resolve it. About one week later, as mentioned in the parties' itinerary, Relator filed a motion to compel seeking an order for Boston Scientific to produce an updated privilege log. (ECF No. 229).

Before that second pending motion was heard, the parties filed their July 2019 joint status letter. (ECF No. 239). The parties noted changes in their deposition schedule but did not have any disputes for the Court. (ECF No. 239). The parties indicated they were discussing a dispute related to Relator's Sixth Requests for Production. (ECF No. 239).

---

[5] This was the back-end loading of depositions that the Court cautioned Relator from engaging in, but was inevitable at this point in the discovery process.

Finally, the parties had a dispute related to the timing of showing confidential documents to deponents with respect to signing the protective order. (ECF No. 239).

The Court heard both outstanding motions to compel—the latter filed privilege log dispute and the earlier motion to compel related to Boston Scientific's government presentations—at a motions hearing on July 16, 2019. (ECF No. 244). All four of Boston Scientific's reasons for refusing to produce the presentations it made to the government were rejected and the Court ordered production within seven days. (Tr. of July 16, 2019 Mot. Hrg. 29:2–31:25, ECF No. 249; ECF No. 244). Further, Boston Scientific was to produce updated privilege logs within four weeks. (ECF No. 244; July 16, 2019 Tr. 32:1–18). The Court then held a status conference with the parties concerning their latest status letter. (July 16, 2019 Tr. 36:5–58:15; ECF No. 244). Boston Scientific appealed the decision relating to the motion to compel government presentations to the District Court. (ECF No. 253). That appeal was denied and the order was fully upheld on August 28, 2019. (ECF No. 279).

While the appeal was pending, the parties raised a dispute regarding Rule 30(b)(6) deposition topics. (*See* ECF Nos. 258, 261). The Court directed the parties to meet and confer then submit a joint letter outlining their disputes as to each Rule 30(b)(6) deposition topic and their positions. (ECF No. 258). The parties complied. (ECF No. 261). The Court and parties then went through every disputed Rule 30(b)(6) topic. (ECF No. 263). To the parties' credit, they were able to resolve about half of the disputed deposition topics either in advance of the telephone conference or during it. As for the remainder, the Court provided its rulings. (ECF No. 263). The parties then stipulated to most, if not all, of the

Rule 30(b)(6) deposition topics by referring to testimony or documents found elsewhere in discovery. (ECF Nos. 276, 280).

About one week later, the parties filed their next monthly status letter. (ECF No. 266). First, Relator raised an issue concerning Boston Scientific amending its Rule 26 initial disclosures on the final day of discovery. (ECF No. 266, at 1–14). Second, Relator raised an issue regarding Boston Scientific not producing audio recordings of telephone calls. (ECF No. 266, at 14–17). Third, Relator raised an issue with Boston Scientific not producing videos embedded in power point presentations that it had already produced. (ECF No. 266, at 17–18). Fourth, the parties discussed a remaining Rule 30(b)(6) deposition topic concerning Boston Scientific's litigation hold. (ECF No. 266, at 19). And finally, the parties discussed a stipulation related to Dham as concerned the Rule 30(b)(6) deposition. (ECF No. 266, at 20). The Court indicated that the Rule 26 disclosure dispute would need to be resolved via motion practice, instigating the instant motion before the Court. (ECF No. 271). Next, the Court expressed its dissatisfaction with Boston Scientific regarding the telephone recordings,[6] but did not order them produced as they likely no longer existed. The Court did, however, order the videos from the presentations produced. The Court also ordered that Relator was entitled to know about the scope of Boston

---

[6] This dispute showcases the discovery slow-rolling of Boston Scientific. Relator requested documents, including audio recordings, of complaints reported to the company. No audio recordings were produced. At Matte's deposition, she testified that telephone calls were recorded. Relator again requested production of audio recordings. Boston Scientific said it would not produce the recordings because the discovery deadline had passed and that it had already produced sufficient discovery. Boston Scientific then asserted that the Lighthouse database that it had already produced pursuant to Court order included transcriptions of calls. Boston Scientific later backtracked by indicating they were not transcripts but high-level summaries. Even later, Boston Scientific reported the audio recordings are not kept for very long. This rigmarole could have been avoided entirely had Boston Scientific chosen to be forthright rather than antagonistic.

Scientific's litigation hold. Finally, the parties reported that they had resolved the Dham stipulation.

While the instant motion—detailed in the following section—was being briefed, the parties filed their September 2019 status letter. (ECF No. 287). Boston Scientific produced privilege logs in accordance with the Court's earlier guidance and the matter should be resolved after Relator has an opportunity to review them. (ECF No. 287, at 1). The parties argued about the audio recordings and transcripts discussed at the previous month's status conference, and at other times too, but there was no active dispute presented. Rather, it was the parties expressing their anger and indignation at the other's behavior. (ECF No. 287, at 2–4). Finally, the parties were finalizing the Rule 30(b)(6) matters. (ECF No. 287, at 4–5). The Court ultimately cancelled the status conference and directed the parties to continue working through the last remaining issues related to privilege logs and Rule 30(b)(6) deposition stipulations. (ECF No. 299).

All other status letters received, that is those post-dating September 30, 2019, were not part of the record when the Court took the instant motion under advisement and therefore have not been considered.[7]

### D. Discovery's End: Irreconcilable Differences

As mentioned, Relator now seeks sanctions following an acrimonious finish to the parties' fact discovery. Despite the exhaustive outline of discovery above, the Court finds it necessary to provide even further detail of the parties' discovery actions given the subject

---

[7] The only dispute raised in the October 2019 status letter, (ECF No. 300), is now subject a pending motion, (ECF No. 301), that will be handled separately from the instant motion.

matter of the motion. This is because everything discussed above was only the discovery information brought before the Court, while the dispute here relates more to the discovery interactions between the parties.

On March 12, 2018, Boston Scientific served its Rule 26(a)(1) disclosures. (ECF No. 266-1). The first section identifies "[i]ndividuals likely to have discoverable information that [Boston Scientific] may use to support its claims or defenses and the subjects of that information." (ECF No. 266-1, at 1).[8] Boston Scientific listed ten persons, their relationship to Boston Scientific, and what information they would likely have: (1) Sumeet Dham (employee), launch of Cognis and Teligen; (2) Renold Russie (employee), launch of Cognis and Teligen and related correspondence with the FDA; (3) Rich Dujmovic (employee), launch of Cognis and Teligen and related correspondence with the FDA; (4) Ingrid Matte (employee), correspondence with the FDA related to Cognis and Teligen; (5) Kay Sachs-Campbell (employee), regulatory submissions related to Cognis and Teligen; (6) Christopher Harrold (former employee), launch of Cognis and Teligen and related correspondence with the FDA; (7) Arjun Sharma (former employee), launch of Cognis and Teligen; (8) Fred Colen (former employee), information related to statements Colen made; (9) Jim Tobin (former employee), information related to Relator's departure from Boston Scientific; and (10) Ray Elliot (former employee), information related to Relator's departure from Boston Scientific. (ECF No. 266-1, at 1–2). Boston Scientific also included: "Individuals deposed by Relator or Defendant or who submit

_____

[8] Internal document pagination used, not ECF pagination.

affidavits or declarations in this case." (ECF No. 266-1, at 2). Finally, Boston Scientific purported to "reserve[] the right to amend and/or supplement this information should additional individuals be identified who are likely to have discoverable information that Defendant may use to support its claims or defenses." (ECF No. 266-1, at 2).

On July 30, 2019, Boston Scientific amended its Rule 26(a)(1) disclosures. (ECF No. 266-9). There were two changes to previously identified individuals: Sumeet Dham was now a former employee; and Ingrid Matte no longer had information on correspondence with the FDA related to Cognis and Teligen, but now had information related to the launch of Cognis and Teligen. (ECF No. 266-9, at 1).[9] Boston Scientific then identified seven wholly new individuals ("the newly-disclosed witnesses") that had information Boston Scientific may use to support its claims or defenses: (1) Brian Scovil (former employee), launch of Cognis and Teligen; (2) Tim Smith (employee), launch of Cognis and Teligen; (3) Jim Gilkerson (former employee), launch of Cognis and Teligen and related correspondence with the FDA; (4) Torsten Kayser (employee), launch of Cognis and Teligen in Europe; (5) Sharon Zurn (employee), correspondence with the FDA related to Cognis and Teligen; (6) David Breiter (former employee), correspondence with the FDA related to Cognis and Teligen; and (7) Erika Huffman (former employee), correspondence with the FDA related to Cognis and Teligen. (ECF No. 266-9, at 2–3).

Of greatest import here, four individuals in Boston Scientific's first initial disclosures were identified as having information related to FDA correspondence or

---

[9] Internal document pagination used, not ECF pagination.

submissions: Renold Russie, Ingrid Matte, Kay Sachs-Campbell, and Christopher Harrold. (ECF No. 266-1, at 1–2). At her July 25, 2019 deposition, Ingrid Matte testified she had no involvement in decision-making regarding reportability of adverse events to the FDA, did not know the criteria Boston Scientific used to report events to the FDA, and had no responsibilities related to reporting events to the FDA from 2007 through 2009. (Matte Dep. Tr. 37:18–41:4). Matte only gained that role beginning in June 2010 and for devices not at issue in this lawsuit. (Matte Dep. Tr. 41:18–44:25). Matte testified that Erika Huffman oversaw reporting events to the FDA for the relevant time period. (Matte Dep. Tr. 38:18–40:6). Then, on July 30, Boston Scientific removed Matte as an individual listed as having information related to FDA correspondence or submissions. (ECF No. 266-9, at 1). It added four new witnesses with information concerning FDA correspondence: Torsten Kayser, Sharon Zurn, David Breiter, and Erika Huffman. (ECF No. 266-9, at 2–3). Considering all Rule 26(a)(1) disclosures, the following persons were disclosed by Boston Scientific as having information related to FDA correspondence or submissions: Renold Russie, Kay Sachs-Campbell, Christopher Harrold, Torsten Kayser, Sharon Zurn, David Breiter, and Erika Huffman.

    As exhaustively detailed above, the parties had a prolonged meet and confer process related to identifying custodians for ESI searches. On May 14, 2018, Relator was "disappoint[ed]" in Boston Scientific's "initial list of 4 custodians . . . particularly considering that [its] initial disclosures had several additional individuals." (ECF No. 266-2, at 2–3). Following a month of meeting-and-conferring, Relator proposed adding eight individuals to the eleven currently considered based on persons identified in the complaint

and Boston Scientific's initial disclosures. (ECF No. 266-3, at 2–3). Come August 2018, Boston Scientific believed it had provided a "fulsome" list of custodians and that no one was "missing." (ECF No. 266-4, at 3). The parties engaged in more discussions and eventually agreed on 27 custodians. (ECF Nos. 266-5, 266-6, 266-7). Ultimately, seven of the ten persons identified in the initial disclosures were listed as custodians. (ECF No. 266-10, at 3). Of the newly-disclosed witnesses, five were not listed as custodians, including *all four* newly-disclosed witnesses with information concerning FDA correspondence. Of the seven newly-disclosed witnesses, Relator had earlier requested that Scovil and Gilkerson be named custodians. (ECF No. 292-1, at 7).

Boston Scientific notes that the newly-disclosed witnesses were not complete strangers to the discovery process. (ECF No. 291, at 6–20). As noted, Relator requested that Scovil and Gilkerson to be included as custodians following a review of discovery produced in May 2018. Relator noticed but then cancelled depositions for Scovil, Gilkerson, and Smith. Relator noticed the deposition of Kayser, but the deposition did not proceed after Boston Scientific requested expenses for transporting the Europe-based Kayser to the United States. Boston Scientific designated Zurn as a corporate representative on two Rule 30(b)(6) topics, but Zurn was never deposed individually. Breiter and Huffman were never noticed for deposition.

With this in mind and following Matte's deposition, Relator wrote Boston Scientific indicating it believed it was prejudiced by Boston Scientific's failure to list Huffman in its initial disclosures or as a custodian. (ECF No. 266-8). Relator requested Huffman be designated a custodian, Boston Scientific produce any documents responsive to the ESI

search terms negotiated as to all custodians, and permit a deposition of Huffman if necessary. (ECF No. 266-8). Boston Scientific did update its Rule 26(a)(1) disclosures, but it otherwise rebuffed Relator's requests. (ECF No. 266-10).

The instant motion followed once the Court indicated it would not be considered at the monthly status conference. The parties have submitted extensive briefing and exhibits. (ECF Nos. 283, 284, 291, 292, 298; *see also* ECF No. 266). These submissions, along with the monthly status reports and other motion submissions, provide a detailed look at the parties' discovery efforts to date. Given this voluminous record and the Court's intimate familiarity with the discovery actions of the parties, it cancelled the hearing and took the matter under advisement based on the written submissions. (ECF No. 299).

## II. ANALYSIS

### A. Legal Standard

A party *must* identify "each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). These disclosures *must* be made at or within 14 days of the parties' Rule 26(f) conference unless otherwise provided by the court. Fed. R. Civ. P. 26(a)(1)(C). A party "*must* make its initial disclosures based on the information then reasonably available to it" and "is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Fed. R. Civ. P. 26(a)(1)(E) (emphasis added). A party *must* supplement or correct its disclosure "in a timely manner if the party learns

that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Initial disclosures are meant "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information." Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment. "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment. The rule does not expect parties to disclose witnesses it does not intend to use. Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment. But as "case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use." *Id.*

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction," the court may: (A) order payment of reasonable expenses, including attorney's fees, caused by the failure; (B) inform the jury of the party's failure; and (C) impose other appropriate sanctions, including those described by Rule 37(b)(2)(A)(i)–(vi). Fed. R. Civ. P. 37(c)(1). Those sanctions include: (i) directing that the matters or facts be taken as established for purposes of the action; (ii) prohibiting the disobedient party from supporting or opposing

designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or part; (iv) staying further proceedings until a court order is obeyed; (v) dismissing the action in whole or part; and (vi) rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A). The "district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.*; *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795–96 (D. Minn. 2000).

### B. The Rule 26(a)(1)(A) Violation

As Rule 26(a)(1) makes clear, initial disclosure obligations are mandatory. Individuals likely to have discoverable information *must* be identified at the outset of the parties' discovery efforts. Fed. R. Civ. P. 26(a)(1)(A)(i), 26(a)(1)(C). These disclosures are made based on information reasonably available to the parties. Fed. R. Civ. P. 26(a)(1)(E). If someone is not identified in these initial disclosures, the initial disclosures must be amended if that "information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Of greatest import, Huffman was not included on Boston Scientific's initial disclosures despite being a central witness as to Boston Scientific's communications with the FDA concerning the Cognis and Teligen devices. Boston Scientific's communications

with the FDA concerning the Cognis and Teligen devices have been the principal focus of this lawsuit since its inception. Thus, given Huffman's central status to the claims at issue in this litigation, she should have been included in Boston Scientific's initial disclosures. This conclusion is buttressed by Boston Scientific adding Huffman to its amended Rule 26 disclosures on the final day of discovery.

Boston Scientific argues that it had no affirmative obligation to amend its Rule 26 disclosures to add Huffman because she was known to Relator through the course of discovery. Boston Scientific notes that Huffman was referenced in "over 400" documents produced in May 2018. (ECF No. 266-10, at 3). Boston Scientific indicates that 30,000 documents in total were produced in May 2018, representing those documents produced to the government during its investigation. (ECF No. 291, at 2). So, in Boston Scientific's view, being referenced in 1.34% to 1.66% of documents,[10] is enough for an opposing party to immediately and irrefutably recognize someone's central and critical role to the claims at issue.[11] This Court disagrees. *E.g.*, *Taylor v. New York State Office for People with Dev. Disabilities*, 2016 WL 2858856, at *6 (N.D.N.Y. May 13, 2016) ("Defendants were not required to cull the document production and assume that plaintiff would call at trial any number of the individuals mentioned therein.").

---

[10] Because Boston Scientific uses the "over 400" number, this Court calculated based on 401 to 499 documents.

[11] Ultimately, Huffman was referenced in 1,344 documents produced. (ECF No. 266-10, at 3). Even if Boston Scientific's total production remained at 30,000 documents—which it assuredly did not—Huffman was only referenced in 4.48% of them. In fact, by April 1, 2019, Boston Scientific had produced "approximately 48,000 documents." (ECF No. 291, at 3). Thus lowering Huffman's references to 2.8% total.

Boston Scientific's own argument undercuts its position. If it should have been readily apparent to Relator from this initial production of 30,000 documents that Huffman was a person likely to have discoverable information, it should have been *more* apparent to Boston Scientific that Huffman was a person likely to have discoverable information. This is because Boston Scientific, having then gone through some 4.5 years of government investigation, was well aware of the persons likely to have discoverable information. In fact, the 30,000 documents produced to Relator was discovery Boston Scientific had already sifted through to produce to the government. If, having already generated and produced these 30,000 documents to the government before drafting its Rule 26 disclosures, Boston Scientific did not view Huffman as a person likely to have discoverable information sufficient to warrant inclusion on its initial disclosures, how then was Relator supposed to make that conclusion independently? Boston Scientific's argument is disingenuous and mendacious.

Even more troubling, however, is the implication behind Boston Scientific's argument. If Boston Scientific did not consider Huffman a witness at the time of its initial disclosures, how could Boston Scientific have provided a truthful and fulsome response to the federal government's False Claims Act investigation? Surely, in appropriately responding to the government's investigation Boston Scientific would have recognized the importance of Huffman in the same manner it now insists Relator should have *obviously* realized her importance. Assuredly, then, Boston Scientific would have included Huffman on its initial disclosures. The only conclusion then, based on the arguments Boston Scientific presents here, is that either Boston Scientific knew of Huffman's importance and

deliberately left her off its list of initial disclosures or it withheld documents from the federal government during its investigation. It is much more palatable to believe Boston Scientific committed a discovery violation than impeded a government investigation.

Boston Scientific also argues that it did not need to supplement its Rule 26 disclosures until the end of discovery because only then was it readily apparent what witnesses would be necessary for its defenses to Relator's claims. This argument is also unpersuasive. While "[s]upplementations need not be made as each new item of information is learned," it "should be made at appropriate intervals during the discovery period." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment. Boston Scientific made zero supplementations throughout discovery, certainly not at "appropriate intervals." The Court is convinced that Boston Scientific intended to use Huffman as a witness and hid that information until the final moments of discovery. As discussed already, Huffman is a central witness as to Boston Scientific's communications with the FDA concerning the Cognis and Teligen devices and those communications (or lack thereof) with the FDA are the principal claim in this lawsuit since its inception. Boston Scientific cannot go through an entire government investigation and the entire discovery period with the *qui tam* Relator then feign ignorance as to which witnesses and what documents are important to the claims that have been considered the whole time. Such a conclusion is absurd, and Boston Scientific knows it.

Finally, Boston Scientific argues it did not need to disclose Huffman because it did not intend to use her to "*support* its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). This argument is undercut by Boston Scientific adding Huffman to its

disclosure list. If Huffman does not support Boston Scientific's claims or defenses, then she has no purpose on its Rule 26(a) disclosures and Boston Scientific may have committed yet another discovery violation. More damning is the flipside of this argument: Huffman has information that damages Boston Scientific's defenses and she was withheld from Relator.

The Court finds no Rule 26 violation with respect to Scovil and Gilkerson. Scovil and Gilkerson were designated custodians and Relator should have all discovery from ESI search terms that these two possessed. While there is no explanation as to why the depositions of Scovil and Gilkerson were cancelled, it cannot be said Relator did not have the opportunity to depose them. As such, while Scovil and Gilkerson were not initially listed on Boston Scientific's Rule 26 disclosures, they were otherwise made known to Relator through the discovery process. Even though he was not a custodian, the same holds true for Smith because Relator noticed Smith's deposition but ultimately cancelled it.[12]

### C. The Violation Harmed Relator and Had No Substantial Justification

Failure to provide witness information under Rule 26(a) or (e) prevents a party from using that discovery unless the failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the non-complying party to prove harmlessness or justification. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018) (quoting *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 20–21 (1st Cir.

---

[12] It is a much closer call as to Kayser and Zurn. Kayser was noticed for a deposition, but it appears to have not gone forward due to monetary concerns. Zurn was not noticed as an individual deponent, but was made available as a corporate witness. Breiter, like Huffman, was not noticed for a deposition and likewise constitutes a Rule 26 violation. While Kayser and Zurn are close calls, their late-disclosure was neither harmless or substantially justified, as discussed below, and also constitute Rule 26 violations.

2001)); *Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, 2019 WL 302514, at *3 (W. D. Mo. Jan. 23, 2019).

As concluded, Huffman is a central witness. Her exclusion from Boston Scientific's Rule 26 disclosures affected discovery significantly. By not including Huffman in its initial disclosures, Boston Scientific was able to shield her from nearly all of Relator's discovery because Boston Scientific's initial disclosures shaped Relator's inquires. And contrary to Boston Scientific's arguments, Relator was not naïve or misplaced in relying upon Boston Scientific's Rule 26 disclosures to shape the discovery discussions because they serve as the jumping point to such efforts. Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment (discussing that initial disclosures "accelerate the exchange of basic information about the case"). Boston Scientific misled Relator through its incomplete initial disclosures and those initial disclosures shaped the entire course of discovery in this matter, from document requests and interrogatories to depositions; Relator used Boston Scientific's initial disclosures to negotiate the list of custodians and other matters. Boston Scientific cannot be permitted to set the parameters of discovery via its initial disclosures then obliterate those very parameters on the final day of discovery in the way it did here. Boston Scientific's actions prejudiced Relator throughout the discovery process.

The initial disclosures and subsequent initial discovery production in this matter guided the ESI custodian discussion which then set the outer bounds of discovery in this matter. Boston Scientific cannot fault Relator for not knowing everything about Boston Scientific's internal workings when it failed to disclose those internal workings in sufficient detail. Boston Scientific's argument is akin to putting up bumpers during a

bowling game then exclaiming what an excellent game they played because Relator did not bowl a single gutter ball. Everything is not fine here. The bumpers—the Rule 26 disclosures—shaped the contours of the parties' subsequent game—discovery. To argue otherwise rejects the central tenets of Rule 26. Thus, Boston Scientific's withholding of Huffman, Breiter, Kayser, and Zurn from its Rule 26 disclosures was not harmless.

Boston Scientific's failure to provide witness information in its Rule 26 disclosures until the final hours of discovery is not justified under any explanation, much less *substantially* justified. As discussed above, Boston Scientific has been defending its conduct since 2011 when the initial complaint was filed and the government began its investigation as to intervention. For Boston Scientific to assert that it required Relator to finish his depositions before it knew what witnesses it would rely on is, frankly, absurd. Moreover, Boston Scientific operates in a heavily regulated medical device industry and, as such, has compliance departments in contact with federal agencies like the FDA. For Boston Scientific to claim it did not know which of its own current or former employees would be important in a case revolving around its communications with the FDA stretches all credulity. The Court is wholly unpersuaded that Boston Scientific did not have a basic understanding of its factual defenses to Relator's claims until the close of discovery and the case was moving towards summary judgment and trial. As such, Boston Scientific was not substantially justified in withholding Huffman, Breiter, Kayser, and Zurn from its Rule 26 disclosures until the final day of discovery.

It is readily apparent to the Court that this was an intentional discovery tactic by Boston Scientific. By limiting its Rule 26 disclosures then engaging in overdrawn meet-

and-confer sessions, Boston Scientific weaponized the Court's admonition that discovery would not be extended in this matter. Boston Scientific has been represented by its lead counsel since the inception of this lawsuit. While it is true many lawyers at the law firm of Reed Smith LLP were dragged aboard for the monumental task of completing discovery in time, there is no doubt that lead counsel directed Boston Scientific's discovery behavior the entire time.[13] The Rule 26 failure was not some oversight by an overworked associate attorney, but a strategic directive straight from the top of Boston Scientific's legal team. This strategy plagued discovery with baseless legal arguments at calculated moments: (1) asserting, without any legal authority whatsoever, that Relator must allocate half of each of his depositions to Boston Scientific; (2) feckless privilege logs; (3) an argument that no privilege log was necessary because it was not promptly requested by Relator despite the Rules requiring privilege log production contemporaneous with discovery production; (4) arguing that a database need not be disclosed or produced because it was not created with litigation in mind; (5) withholding presentations made to the government on four baseless legal grounds; (6) and everything else detailed herein. Essentially, Boston Scientific calculated that since the discovery endpoint was not likely to shift, it would be worthwhile to delay and obstruct discovery to hamstring Relator's efforts to gather information to support his claims. The Court will not reward such gamesmanship.

---

[13] Even if lead counsel was merely implementing directives from Boston Scientific's in-house counsel, lead counsel ultimately bears the burden of Boston Scientific's actions. While the Court can only speculate, if this discovery tactic was birthed from within Boston Scientific's in-house legal team rather than outside counsel at Reed Smith, it was outside counsel's obligation to actually *counsel* Boston Scientific as to the propriety of such a tactic.

Boston Scientific defends its actions, in large part, by pointing at Relator's conduct in discovery. (ECF No. 291, *passim*). To be fair, the Court is unhappy with Relator's conduct through discovery. While the prospect of endless motion practice is not appealing to the Court or the parties, this case begged for early motions to reign in Boston Scientific's lethargic discovery compliance. The Court set up monthly status letters and conferences for the very purpose of streamlining discovery disputes but, as exhaustively detailed above, the parties failed to properly utilize this process and instead engaged in a dragged out letter writing campaign filled with inane nitpicking meant principally to drain the parties' war chests and pad the lawyers' billable hours requirements. Relator should have been more diligent in calling out Boston Scientific's absurdity. But even more so, Relator should not have backloaded discovery in the manner he did, particularly given the volume of documents that were likely to be at issue in a *qui tam* case aimed at a heavily regulated medical device manufacturer. But Relator was essentially fighting with a blindfold on because of Boston Scientific's discovery actions. The bully and the victim should not be punished equally when the arbiter is called in.

### D. Sanction

"Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of sanctions." *Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004).

"Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)." *Vanderberg*, 906 F.3d at 705. Since "exclusion

occurs automatically by operation of the rule," the "rule permits, but does not require, the imposition of an alternative sanction on a party's motion." *Id.* Those alternate sanctions may include: (1) order payment of reasonable expenses, including attorney's fees, caused by the failure; (2) inform the jury of the party's failure; (3) directing that the matters or facts be taken as established for purposes of the action; (4) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (5) striking pleadings in whole or part; (6) staying further proceedings until a court order is obeyed; (7) dismissing the action in whole or part; and (8) rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 37(b)(2)(A). The court should seek to achieve substantial justice when considering a Rule 26 violation. *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002) (citing *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993)). The remedy should be tailored for the particular circumstances of the case. *Wegener*, 527 F.3d at 692.

The self-executing sanction of Rule 26(a) is ineffective here. Exclusion of the newly-disclosed witnesses and information they possess would further Boston Scientific's Rule 26 violation rather than remedy it. Relator has the burden of proving its claims relating to Boston Scientific's FDA communications, or lack thereof. It is important for Relator to have access to the full landscape of those communications. Thus, automatic exclusion does not redress the harms caused by Boston Scientific's violations.

After consideration of the Rule 26 violations, Boston Scientific's discovery conduct, the parties overall discovery efforts, the importance of the withheld discovery, and the remedies requested by Relator, the Court concludes that the appropriate sanction is for

Boston Scientific to provide all the discovery it withheld in its shell game with the identities of its newly-disclosed witnesses. To achieve this sanction, Boston Scientific must produce documents from Huffman, Breiter, Kayser, and Zurn in the same manner it produced for the previously-agreed-upon custodians.[14] Boston Scientific shall produce each and every document that hits on the parties' ESI search terms. This discovery shall be produced within 14 days of this Order. This sanction achieves the very thing Boston Scientific sought to avoid through its discovery violation: providing discovery to Relator from the newly-disclosed witnesses.

To give effect to this sanction, Relator will then have 14 days after this discovery is produced to review the discovery to decide if depositions will be necessary. If Relator would like to depose Huffman, Breiter, Kayser, or Zurn, he may do so at a time convenient to Relator's counsel within 60 days of this Order.[15] Boston Scientific shall make its counsel and Huffman, Breiter, Kayser, and Zurn available for whichever dates, time slots, and locations Relator desires.[16] The deposition questioning may last up to 8 hours for each witness.[17]

---

[14] While Relator seemingly cancelled Kayser's deposition and Zurn was available, albeit as a Rule 30(b)(6) deponent, these decisions were made using the tainted discovery parameters discussed above. To properly remedy Boston Scientific's violations, the Court concludes it is best to permit Relator a second chance as to Kayser and Zurn, alongside a first chance at Huffman and Breiter.

[15] This necessarily requires extension of the remaining pretrial scheduling order deadlines. An amended pretrial scheduling order shall issue extending all existing deadlines by at least 60 days. Until that order issues, the parties shall treat all deadlines as extended by 60 days from the date of this Order.

[16] The Court understands Breiter and Huffman are former employees. Boston Scientific shall not interfere or impede in any way the scheduling of Breiter and Huffman's depositions. Boston Scientific shall impart upon Breiter and Huffman the importance of cooperation should Relator seek their depositions. The Court will not hesitate to issue bench warrants for any subpoena non-compliance.

[17] The deposition time limit prescribed by the pretrial scheduling order (100 total hours) does not limit Relator's ability to depose the witnesses.

Because the Court is ordering additional discovery take place on some of the newly-disclosed witnesses, the parties should be privy to the same information. While the self-executing sanction of Rule 26(a) is generally ineffective here, the Court will not countenance further shenanigans from Boston Scientific. Therefore, Boston Scientific is barred from using any documents or testimony to support its defenses or refute Relator's claims at any future proceeding in this matter, including summary judgment and trial, if it cannot affirmatively show that said documents or testimony was produced to Relator in the normal course of discovery or in response to this Order.[18]

The Court has considered Relator's adverse inference sanction request but finds it unnecessary at this time given the remedial sanctions ordered. So long as Boston Scientific complies with its obligations outlined herein, the parties should be returned to an equal footing in advance of summary judgment and trial and the taint of Boston Scientific's Rule 26 violation will have been cleansed. Thus, an adverse inference instruction would be unnecessary and only serve to obfuscate the facts and merits of this matter. However, the Court may revisit this decision should Boston Scientific fail to meet its obligations under this Order.

Finally, this motion should never have been necessary. Discovery is not a game and the Federal Rules of Civil Procedure are not mere guidelines. Throughout this case, Boston Scientific has displayed a profound lack of deference to the Court and the Rules of Procedure. Despite the Court's regular attempts to guide the parties through discovery,

---

[18] This sanction does not preclude generating new testimony from facts and documents already disclosed, but Boston Scientific must be able to show that the facts upon which said testimony or opinions are based on documents previously disclosed to Relator.

Boston Scientific has exhibited a lack of professionalism and courtesy. Boston Scientific must pay the cost of the unadvisable strategy which lead to the discovery violations discussed herein. Boston Scientific is hereby ordered to pay Relator's costs and attorney's fees for the instant motion and for all additional discovery authorized by this Order. The parties are first directed to attempt to resolve payment without Court intervention. If that fails, however, Relator shall submit an affidavit of costs and attorney's fees promptly following the expiration of the 60-day deposition window authorized above. Boston Scientific may respond to the reasonableness of the costs and fees sought, but it will not be an avenue to relitigate this motion.

## III.    CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Relator's Motion for Sanctions, (ECF No. 281), is **GRANTED IN PART and DENIED IN PART** as discussed herein.

Dated: October 16, 2019                          _____*s/ Steven E. Rau*_____
                                                 STEVEN E. RAU
                                                 United States Magistrate Judge
                                                 District of Minnesota

                                                 *Higgins v. Boston Scientific*
                                                 Case No. 11-cv-2453 (JNE/SER)