# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America and the State of California, *ex rel.* Steven Higgins,<br><br>Plaintiffs,<br><br>v.<br><br>Boston Scientific Corporation,<br><br>Defendant. | Case No. 11-cv-2453 (JNE/TNL)<br><br><br><br>**ORDER** |

---

Daniel R. Miller and Jonathan Z. DeSantis, Walden Macht & Haran LLP, 2001 Market Street, Suite 2500, Philadelphia PA 19103; Joy P. Clairmont and William H. Ellerbe, Berger Montague PC, 1818 Market Street, Suite 3600, Philadelphia PA 19103; and E. Michelle Drake, Berger Montague PC, 43 Southeast Main Street, Suite 505, Minneapolis MN 55414 (for Relator Steven Higgins); and

Fredrick Robinson and Lesley Reynolds, Reed Smith LLP, 1301 K Street Northwest, Suite 1100 – East Tower, Washington DC 20005; Caitlin Chambers, Reed Smith LLP, 811 Main Street, Suite 1700, Houston TX 77002; and Allison M. Lange Garrison, Norton Rose Fulbright US LLP, 60 South Sixth Street, Suite 3100, Minneapolis MN 55402 (for Defendant Boston Scientific Corporation).

---

## I.  INTRODUCTION

This matter is before the Court on Relator's Motion for Sanctions. (ECF No. 281). The motion was originally ruled upon on by the Honorable Judge Steven E. Rau, United States Magistrate Judge for the District of Minnesota, on October 16, 2019. *United States ex rel. Higgins v. Boston Sci. Corp.*, 2019 WL 5206221 (D. Minn. Oct. 16, 2019) (hereinafter "Oct. 16 Order").[1] The Oct. 16 Order was vacated to permit for oral argument

---

[1] Also available at ECF No. 313.

and reconsideration. *United States ex rel. Higgins v. Boston Sci. Corp.*, 2019 WL 6328135 (D. Minn. Nov. 25, 2019) (noting due process concerns) (hereinafter "Nov. 25 Order").[2] This case was reassigned to the undersigned[3] to hear the parties' arguments as to the factual and legal bases for their positions and to review Relator's motion anew. *Id.* at *1. The Nov. 25 Order made no decision as to the merits of the Oct. 16 Order. *Id.* ("This decision is made solely to provide the magistrate judge with an opportunity to reconsider Defendant's arguments and is not a reflection on the merits of the order."). The undersigned thereafter heard argument from the parties. (ECF No. 338). For the following reasons, the motion is granted in part and denied in part and the sanctions specified herein are imposed on Boston Scientific.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A. Pre-Discovery: The Complaint, the Amended Complaints, Related Motion Practice, and the Parties' Rule 26(f) Report

Relator Steven Higgins, MD, initiated this *qui tam* action on August 26, 2011 on behalf of the United States and the State of California under the False Claims Act and the California False Claims Act. (Compl. ¶ 1, ECF No. 1). Relator alleged that Boston Scientific engaged in two distinct schemes: (1) selling defective cardiac defibrillator devices under the names Cognis and Teligen; and (2) providing kickbacks. (Compl. ¶ 2). Almost five years later, the United States and the State of California declined to intervene

---

[2] Also available at ECF No. 334.
[3] Due to Magistrate Judge Rau's unfortunate passing, this case was reassigned to the undersigned while the Oct. 16 Order was on appeal to the Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota. (ECF No. 331).

and, on May 6, 2016, Relator was permitted to pursue this action on their behalf. (ECF Nos. 44, 47).

Relator thereafter filed his Amended Complaint on October 7, 2016. (Am. Compl., ECF No. 61). The Amended Complaint alleged one fraudulent scheme: that Boston Scientific sought Food and Drug Administration (FDA) approval and subsequently sold defective cardiac defibrillator devices under the names Cognis and Teligen. (Am. Compl. ¶ 2). Boston Scientific moved for dismissal of Relator's suit. (ECF No. 63). In deciding that motion, the Court first addressed whether the Court had subject matter jurisdiction with respect to the False Claims Act's public disclosure bar, concluding it does. *United States ex rel. Higgins v. Boston Sci. Corp.*, 2017 WL 3732099, at *3–*4 (D. Minn. Aug. 29, 2017).[4] The Court next found that while Relator appeared to state a viable claim under Rule 12(b), he failed to satisfactorily plead his fraud claim with particularity as required by Rule 9(b). *Id.* at *4–*10. Relator's Amended Complaint was dismissed but he was permitted to amend his complaint to cure the Rule 9(b) pleading deficiencies. *Id.* at *10.

Relator filed his Second Amended Complaint on September 19, 2017, alleging that Boston Scientific engaged in a fraudulent scheme whereby it sought FDA approval and subsequently sold defective cardiac defibrillator devices under the names Cognis and Teligen. (Sec. Am. Compl., ECF No. 98). Again, Boston Scientific sought dismissal of the complaint, arguing that Relator failed to plead his fraud claims with particularity. (ECF Nos. 103, 106). The Court rejected that argument, finding "Higgins has particularly pled

---

[4] Also available at ECF No. 97 at 5–8.

fraud in how Boston Scientific allegedly misled the FDA." *United States ex rel. Higgins v. Boston Sci. Corp.*, 2017 WL 6389671, at *1 (D. Minn. Dec. 13, 2017).[5]

Next, the Court set a pretrial scheduling conference and the parties were directed to jointly prepare a Rule 26(f) report. (ECF No. 121). As the Court previously summarized:

> The parties disagreed on nearly every part of the discovery plan and schedule. (ECF No. 130 *passim*). Following the pretrial conference, this Court directed the parties to meet and confer further in an attempt to reach an agreement on a pretrial schedule that met all parties' needs in lieu of a wholly court-imposed schedule. (ECF Nos. 134, 135). The parties complied and developed a pretrial schedule. (ECF No. 135). The parties also agreed that regular telephone status conferences would "keep discovery in this case moving forward efficiently." (ECF No. 135, at 1). This Court incorporated the parties' agreed-upon deadlines in a pretrial scheduling order and set monthly telephonic status conferences. (ECF Nos. 137, 138).

*United States ex rel. Higgins v. Boston Sci. Corp.*, 2018 WL 5617565, at *1 (D. Minn. Oct. 30, 2018).[6]

While there was some struggle getting it accomplished, the parties outlined their respective positions in the Rule 26(f) report. Relator summarized his lawsuit as follows:

> This lawsuit seeks to recover for tens of thousands of false claims submitted to government health care programs for reimbursement of [Boston Scientific's] defective cardiac defibrillator devices known as Cognis and Teligen. These defective devices were sold in the United States from August 2008 through their eventual FDA recall due to defects—the same defects that are the subject of this action—on July 20, 2009, almost a year after they first were sold in the United States.

(ECF No. 130, at 1). Relator described the build-up to the launch of the Cognis and Teligen devices, including Boston Scientific's acquisition of Guidant in 2006, which "had been plagued with FDA recalls for faulty medical devices for years leading up to the

---

[5] Also available at ECF No. 117.
[6] Also available at ECF No. 177.

acquisition"; that Boston Scientific knew of the defects in the Cognis and Teligen devices due to launching the devices in Europe in February 2008; and a failure to inform the FDA of the European-revealed defects prior to approving them in May 2008. (ECF No. 130, at 2). Relator noted Boston Scientific knew of the defects and developed corrected "Version 2" of the Cognis and Teligen devices while still selling the older, defective Cognis and Teligen devices throughout 2009. (ECF No. 130, at 2–3).

For its part, Boston Scientific denied the claims and "intends to show that it provided robust and complete disclosures of information to the FDA about its experiences with the Cognis and Teligen devices, including disclosures dating from both before and after U.S. launch of the devices." (ECF No. 130, at 3). Boston Scientific asserted it made "timely disclosures to the FDA" and that "the FDA was at all relevant times fully aware of all material facts regarding these two devices." (ECF No. 130, at 3). Boston Scientific promised to "demonstrate that its correspondence with FDA—both before and after the U.S. launch of the Cognis and Teligen devices—provided an accurate account of Defendant's experience with these devices, including reports of negative, patient experiences in Europe and in the United States." (ECF No. 130, at 4).

Relator then sought leave to file a third amended complaint, seeking to add a claim under the California Insurance Frauds Prevention Act ("CIFPA"). (ECF No. 145). Boston Scientific argued the new claim under CIFPA was futile for three reasons: (1) Relator did not file the proposed Third Amended Complaint under seal as CIFPA requires; (2) CIFPA's statute of limitations bars Relator's claim; and (3) Relator's claim is not plead with particularity as required by Rule 9(b). The Court rejected all of Boston Scientific's

futility arguments, but ultimately found that Boston Scientific would be unduly prejudiced by the amendment, so the motion was denied. *United States ex rel. Higgins v. Boston Sci. Corp.*, 2018 WL 5617565, at *2–*8.

### B. The Beginning of Discovery

As noted above, Magistrate Judge Rau scheduled monthly telephonic status conferences—to be preceded by monthly meetings between the parties and a joint status report—to monitor discovery in this matter. (ECF Nos. 138, 182).

The parties began with their first monthly status report on June 11, 2018. (ECF No. 139). The parties were "happy to report that they continue to work through outstanding discovery issues in a cooperative and productive way." (ECF No. 139, at 1).[7] Of note, the parties were still meeting-and-conferring on June 11 regarding Relator's April 3, 2018 requests for production. (ECF No. 139). The parties were discussing electronically stored information ("ESI") search terms and custodians. (ECF No. 139).

As of July 9, 2018, the parties were still discussing the April 2018 requests for production, with Boston Scientific having raised further concerns on July 3, six days before its production deadline. (ECF No. 142).[8] Likewise, the parties were still discussing ESI

---

[7] Unless otherwise noted, references to page numbers in ECF documents are to the ECF pagination.
[8] Boston Scientific notes that it had already produced some 30,000 documents by May 2018 and that July 9, 2018 was its deadline to object to Relator's request for production. (ECF No. 319-1, at 3). True, through the meet-and-confer process, Relator served revised requests for production on June 8 and that made July 9, 2018 Boston Scientific's response deadline. The crux is that documents were requested in April 2018, but production of most documents was dragged out through at least July. That constitutes more than three months without progression on substantive discovery. And Boston Scientific's reliance on production of 30,000 documents is misplaced as these were documents already gathered by Boston Scientific for response to the government's investigation, (*see* ECF No. 200-2 (requesting production of all documents produced to the government in connection with its investigation); these were not documents newly-gathered by Boston Scientific in response to Relator's discovery requests. Thus, as of July 3, 2018, Boston Scientific

search terms and custodians. (ECF No. 142). This process continued through August 14, 2018, (ECF No. 151), and still continued on September 13, 2018. (ECF No. 161). Boston Scientific had served requests for production on June 19, but like Relator's discovery, the parties were engaged in a meet-and-confer process regarding the responses. (ECF No. 161). Relator agreed to "substantially complete" his production three weeks in advance of his noticed deposition. (ECF No. 161).

On October 9, 2018, the parties finally admitted they were at an impasse regarding one discovery matter: Relator's relevancy objections to Boston Scientific's June 2018 requests for production. (ECF No. 172). This dispute had carry-over effects as to the timing of Relator's deposition. (ECF No. 172). The parties were back to working in a "cooperative and productive way" come November 12, 2018. (ECF No. 178). As such, the Court cancelled that month's status conference. (ECF No. 179).

For their December 2018 status update, the parties indicated they had finally agreed upon ESI search terms and custodians after approximately six months of meeting and conferring. (ECF No. 180). Thus, Boston Scientific anticipated it would "begin producing documents pursuant to [the parties'] agreement in the near future." (ECF No. 180). Relator requested that the Court set a deadline on the production, (ECF No. 180), but the Court declined to impose any internal deadlines so as not to interfere with the parties' discovery.

For the next three months, the parties indicated they were working through discovery. (ECF Nos. 183, 188, 190). In January, the parties were finalizing an issue related

---

had yet to produce a single document to Relator's discovery requests that it had not already produced to the government.

to metadata for Relator's document production, (ECF No. 183), that arose three months prior in October 2018, (ECF No. 172). Meanwhile, Boston Scientific was beginning to review documents that were "potentially responsive" to Relator's June 2018 requests for production and expected to begin its "rolling production" by the end of January. (ECF No. 183). To speed this process up, Relator proposed a priority list for the ESI custodians. (ECF No. 183). Boston Scientific produced a privilege log dating back to documents produced in May 2018. (ECF No. 183). The parties were still meeting-and-conferring on one remaining ESI search term. (ECF No. 183). That conversation was ongoing in February 2019, but the parties had finally agreed upon a set of 28 custodians and a priority order. (ECF No. 188). Boston Scientific produced responsive documents related to two of the 28 custodians on January 31. (ECF No. 188).[9] In March 2019, the parties finally resolved the last remaining ESI search term dispute but were now discussing the reasonableness of Boston Scientific's searches. (ECF No. 190). Boston Scientific made productions relating to 18 of the 28 custodians by March 12, 2019. (ECF No. 190). Relator had recently served a second set of requests for production and a revised first set of interrogatories. (ECF No. 190). As a result of the parties' representations, the Court cancelled the status conferences for January, February, and March 2019. (ECF Nos. 184, 189, 191).

---

[9] Boston Scientific produced discovery in January 2019 responsive to a discovery process that began in April 2018. (ECF No. 319-1, at 3). Serving responsive discovery for the first time some *nine months* into discovery challenges a core principle underlying the Rules. *See* Fed. R. Civ. P. 1 (the Rules "should be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding") (emphasis added).

## C. The End of Discovery

Through the March 2019 joint status letter—that is, after almost one full year of discovery—the parties appeared to be functioning well. By the time of the April 2019 status letter, however, there seemed to be a breakdown of discovery that, in hindsight, had been developing for some time.

As of April 5, 2019, Relator believed he had substantially completed his discovery production to Boston Scientific. (ECF No. 192, at 1). Nearly the entirety of the letter detailed a dispute the parties had been engaged in since Relator's April *2018* requests for production: essentially, whether and to what extent Boston Scientific would perform non-custodial searches of its internal database related to FDA reports concerning defects in the defibrillator devices. (ECF No. 192). To date, Boston Scientific had not produced *any* non-custodial searches of the internal database, known as Lighthouse, to Relator, outside of those already produced to the government; the only new documents that Boston Scientific produced were those that happened to be revealed via custodial searches. (ECF No. 192; ECF No. 200, at 5–6). At the monthly conference, the Court reprimanded the parties for failing to utilize properly the status letters as this was a dispute that should have been raised much earlier, particularly given its critical importance to the case. The Court indicated motion practice would be heard on an expedited basis.

The Court heard Relator's motion to compel on April 26, 2019. (ECF No. 202). After hearing arguments, the Court issued an immediate oral order. (ECF No. 202; Tr. of Apr. 26, 2019 Mot. Hrg., ECF No. 209). The Court found the information sought from the Lighthouse database to be both relevant and proportional. (Apr. 26, 2019 Tr. 28:17–30:23).

The Court found Boston Scientific had "taken the parties' discovery protocols to the logical extreme" and "contort[ed] the proportionality limits embraced by Rule 26." (Apr. 26, 2019 Tr. 29:24–30:6). Boston Scientific was ordered to produce "as many documents as are reasonable" with respect to 1,200 identified events within two weeks. (Apr. 26, 2019 Tr. 32:21–33:4). The Court also expressed dissatisfaction at the parties' discovery efforts to date, including their use of the monthly status conferences. (Apr. 26, 2019 Tr. 30:24–33:16). The Court warned the parties not to engage "in the big law firm meet and confer things to death" process, with Relator delaying deposition notices, and Boston Scientific "sandbagging" its response to the discovery order. (Apr. 26, 2019 Tr. 32:1–33:16). The Court again warned the parties that it would not extend discovery deadlines. (Apr. 26, 2019 Tr. 31:1–33:16).

In their May 2019 status letter, Boston Scientific and Relator devoted almost *four* single-spaced pages to fighting about *two* pages that Relator produced following a search to find the metadata for a document he already produced. (ECF No. 207). Essentially, Boston Scientific cried foul, demanding either more discovery or additional deposition time, because Relator came across two previously undisclosed pages while attempting to meet Boston Scientific's metadata requests. (ECF No. 207). The parties also presented a dispute for the Court concerning Relator's over-use of subparts in his interrogatories. (ECF No. 207). Ultimately, the Court limited Relator to 37 total interrogatories and left it to the parties to sort out counting interrogatories and their subparts.

Before the next status conference, the parties raised an urgent dispute related to the deposition of Sumeet Dham, a former Boston Scientific employee central to the design of

the Cognis and Teligen devices. (*See* ECF No. 212). Relator served a deposition subpoena on Dham and his counsel indicated Dham would sit for 7 hours of testimony. (ECF No. 212, at 2). Boston Scientific then demanded that half of the deposition time, 3.5 hours, be allocated to it. (ECF No. 212, at 2). Relator asked the Court to extend the time to depose Dham to accommodate Boston Scientific's request, while Boston Scientific insisted on limiting the deposition to 7 hours and splitting the time equally between it and Relator. (ECF No. 212, at 3–5). The Court, via email, directed that Relator could use the full seven hours, if necessary, to depose Dham and Boston Scientific could request additional time at the upcoming status conference should it believe it was needed. (*See* ECF No. 219, at 9). The Court strongly encouraged the parties to be efficient in their use of time at Dham's deposition and warned that it would not look favorably upon any unwarranted objections or duplicitous questioning.

Around the same time, Relator filed another motion to compel. (ECF No. 213). Relator sought all presentations that Boston Scientific made to federal or state governments during the course of investigating this *qui tam* lawsuit. (ECF No. 214).

Before that motion to compel was heard and decided, the parties submitted their status letter for June 2019. (ECF No. 219). The parties raised five issues: (1) communications with deponents during breaks in the depositions; (2) Boston Scientific's interrogatory responses; (3) scheduling of fact depositions; (4) allocation of deposition time; and (5) the upcoming motion to compel. (ECF No. 219). At the onset, the Court directed the parties to submit a discovery outline for how the parties intended to complete discovery in time, particularly given the impending number of depositions. (ECF

No. 222). The Court provided guidance on the parties' deposition communications and time allocation and made itself available should any breakdown occur during depositions. Another issue was brought up regarding Boston Scientific's June 14, 2019 privilege log. The Court indicated it should be able to make privilege rulings from the privilege log itself, so it directed the parties to include sufficient information in their privilege logs. Finally, the Court urged the parties to resolve the pending motion to compel regarding government presentations.

On June 25, 2019, the parties submitted their itinerary outlining the remainder of discovery. The parties set timelines for remaining document production, scheduling of 34 depositions between June 27 and July 30, and third-party discovery. The parties also noted a dispute related to privilege logs would be subject to a motion to compel should they be unable to resolve it. About one week later, as mentioned in the parties' itinerary, Relator filed a motion to compel seeking an order for Boston Scientific to produce an updated privilege log. (ECF No. 229).

Before that second pending motion was heard, the parties filed their July 2019 joint status letter. (ECF No. 239). The parties noted changes in their deposition schedule but did not have any disputes for the Court. (ECF No. 239). The parties indicated they were discussing a dispute related to Relator's Sixth Requests for Production. (ECF No. 239). Finally, the parties had a dispute related to the timing of showing confidential documents to deponents with respect to signing the protective order. (ECF No. 239).

The Court heard both outstanding motions to compel—the later filed privilege log dispute and the earlier motion to compel related to Boston Scientific's government

presentations—at a hearing on July 16, 2019. (ECF No. 244). All four of Boston Scientific's reasons for refusing to produce the presentations it made to the government were rejected and the Court ordered production within seven days. (Tr. of July 16, 2019 Mot. Hrg. 29:2–31:25, ECF No. 249; ECF No. 244). Further, Boston Scientific was to produce updated privilege logs within four weeks. (ECF No. 244; July 16, 2019 Tr. 32:1–18). The Court then held a status conference with the parties concerning their latest status letter. (July 16, 2019 Tr. 36:5–58:15; ECF No. 244). Boston Scientific appealed the decision relating to the motion to compel government presentations to the District Court. (ECF No. 253). That appeal was denied and the order was upheld on August 28, 2019. *United States ex rel. Higgins v. Boston Sci. Corp.*, 2019 WL 4052327, at *1 (D. Minn. Aug. 28, 2019).[10]

While the appeal was pending, the parties raised a dispute regarding Rule 30(b)(6) deposition topics. (*See* ECF Nos. 258, 261). The Court directed the parties to meet and confer and then submit a joint letter outlining their disputes as to each Rule 30(b)(6) deposition topic and their positions. (ECF No. 258). The parties complied. (ECF No. 261). The Court and parties then went through each disputed Rule 30(b)(6) topic. (ECF No. 263). The parties resolved about half of the disputed deposition topics either in advance of the telephone conference or during it. As for the remainder, the Court provided its rulings. (ECF No. 263). The parties then stipulated to most, if not all, of the Rule 30(b)(6)

---

[10] Also available at ECF No. 279.

deposition topics by referring to testimony or documents found elsewhere in discovery. (ECF Nos. 276, 280).

About one week later, the parties filed their next monthly status letter. (ECF No. 266). First, Relator raised an issue concerning Boston Scientific amending its Rule 26 initial disclosures on the final day of discovery. (ECF No. 266, at 1–14). Second, Relator raised an issue regarding Boston Scientific not producing audio recordings of telephone calls. (ECF No. 266, at 14–17). Third, Relator raised an issue with Boston Scientific not producing videos embedded in power point presentations that it had already produced. (ECF No. 266, at 17–18). Fourth, the parties discussed a remaining Rule 30(b)(6) deposition topic concerning Boston Scientific's litigation hold. (ECF No. 266, at 19). Finally, the parties discussed a stipulation concerning Dham related to the Rule 30(b)(6) deposition. (ECF No. 266, at 20). The Court indicated that the Rule 26 disclosure dispute would need to be resolved via motion practice, instigating the instant motion before the Court. (ECF No. 271). Next, the Court expressed its dissatisfaction with Boston Scientific regarding the telephone recordings, but did not order them produced as they likely no longer existed. The Court did, however, order production of the embedded videos from the presentations. The Court also ordered that Relator was entitled to know about the scope of Boston Scientific's litigation hold. Finally, the parties reported that they had resolved the Dham stipulation.

While the instant motion—detailed in the following section—was being briefed, the parties filed their September 2019 status letter. (ECF No. 287). Boston Scientific produced privilege logs in accordance with the Court's earlier guidance and the matter was likely to

resolve after Relator had an opportunity to review them. (ECF No. 287, at 1). The parties

argued about the audio recordings and transcripts discussed at the previous month's status

conference, and at other times too, but there was no active dispute presented. (ECF

No. 287, at 2–4). Finally, the parties were finalizing the Rule 30(b)(6) matters. (ECF

No. 287, at 4–5). The Court ultimately cancelled the status conference and directed the

parties to continue working through the last remaining issues related to privilege logs and

Rule 30(b)(6) deposition stipulations. (ECF No. 299).

Since this motion was originally filed, the parties raised further disputes. The parties

disputed in their October 2019 joint status letter whether Relator could de-designate an

affirmative expert and replace him with a newly-named expert. (ECF No. 300). That issue

was raised in a simultaneous motion, (ECF No. 301), and the undersigned rejected both

Relator's request to name a new affirmative expert and Boston Scientific's responsive

request to depose an additional expert, (ECF No. 321). The other disputes were procedural

in nature and do not warrant comment.

### D. The Sanctions Motion

As mentioned, Relator now seeks sanctions. Despite the extensive outline above of

discovery problems in this case, the Court finds additional details of the parties' discovery

necessary given the subject matter of the motion.

On March 12, 2018, Boston Scientific served its Rule 26(a)(1) disclosures. (ECF

No. 266-1). The first section identifies "[i]ndividuals likely to have discoverable

information that [Boston Scientific] may use to support its claims or defenses and the

subjects of that information." (ECF No. 266-1, at 1).[11] Boston Scientific listed ten persons, their relationship to Boston Scientific, and what information they would likely have: (1) Sumeet Dham (employee), launch of Cognis and Teligen; (2) Renold Russie (employee), launch of Cognis and Teligen and related correspondence with the FDA; (3) Rich Dujmovic (employee), launch of Cognis and Teligen and related correspondence with the FDA; (4) Ingrid Matte (employee), correspondence with the FDA related to Cognis and Teligen; (5) Kay Sachs-Campbell (employee), regulatory submissions related to Cognis and Teligen; (6) Christopher Harrold (former employee), launch of Cognis and Teligen and related correspondence with the FDA; (7) Arjun Sharma (former employee), launch of Cognis and Teligen; (8) Fred Colen (former employee), information related to statements Colen made; (9) Jim Tobin (former employee), information related to Relator's departure from Boston Scientific; and (10) Ray Elliot (former employee), information about Relator's departure from Boston Scientific. (ECF No. 266-1, at 1–2). Boston Scientific also included: "Individuals deposed by Relator or Defendant or who submit affidavits or declarations in this case." (ECF No. 266-1, at 2). Finally, Boston Scientific stated it "reserves the right to amend and/or supplement this information should additional individuals be identified who are likely to have discoverable information that Defendant may use to support its claims or defenses." (ECF No. 266-1, at 2).

On July 30, 2019, the final day of fact discovery, Boston Scientific amended its Rule 26(a)(1) disclosures. (ECF No. 266-9). There were two changes to previously identified

---

[11] Internal document pagination used, not ECF pagination.

individuals: Sumeet Dham was now a former employee; and Ingrid Matte no longer had information on correspondence with the FDA related to Cognis and Teligen, but now had information related to the launch of Cognis and Teligen. (ECF No. 266-9, at 1).[12] Boston Scientific then identified seven wholly new individuals ("the newly-disclosed witnesses") that had information Boston Scientific may use to support its claims or defenses: (1) Brian Scovil (former employee), launch of Cognis and Teligen; (2) Tim Smith (employee), launch of Cognis and Teligen; (3) Jim Gilkerson (former employee), launch of Cognis and Teligen and related correspondence with the FDA; (4) Torsten Kayser (employee), launch of Cognis and Teligen in Europe; (5) Sharon Zurn (employee), correspondence with the FDA related to Cognis and Teligen; (6) David Breiter (former employee), correspondence with the FDA related to Cognis and Teligen; and (7) Erika Huffman (former employee), correspondence with the FDA related to Cognis and Teligen. (ECF No. 266-9, at 2–3).

Of great import here, five individuals in Boston Scientific's first initial disclosures were identified as having information related to FDA correspondence or submissions: Renold Russie, Rich Dujmovic, Ingrid Matte, Kay Sachs-Campbell, and Christopher Harrold. (ECF No. 266-1, at 1–2). At her July 25, 2019 deposition, Ingrid Matte testified she had no involvement in decision-making regarding reportability of adverse events to the FDA; did not know the criteria Boston Scientific used to report events to the FDA; and had no responsibilities related to reporting events to the FDA from 2007 through 2009. (Matte Dep. Tr. 37:18–41:4). Matte only gained that role beginning in June 2010 and for devices

---

[12] Internal document pagination used, not ECF pagination.

not at issue in this lawsuit. (Matte Dep. Tr. 41:18–44:25). Matte testified that Erika Huffman oversaw reporting events to the FDA for the relevant time period. (Matte Dep. Tr. 38:18–40:6). Then, on July 30, Boston Scientific removed Matte as an individual listed as having information related to FDA correspondence or submissions. (ECF No. 266-9, at 1). It added four new witnesses with information concerning FDA correspondence: Jim Gilkerson, Sharon Zurn, David Breiter, and Erika Huffman. (ECF No. 266-9, at 2–3). Considering all Rule 26(a)(1) disclosures, the following persons were disclosed by Boston Scientific as having information related to FDA correspondence or submissions: Renold Russie, Rich Dujmovic, Kay Sachs-Campbell, Christopher Harrold, Jim Gilkerson, Sharon Zurn, David Breiter, and Erika Huffman.

As detailed above, the parties had a prolonged meet and confer process related to identifying custodians for ESI searches. On May 14, 2018, Relator was "disappoint[ed]" in Boston Scientific's "initial list of 4 custodians . . . particularly considering that [its] initial disclosures had several additional individuals." (ECF No. 266-2, at 2–3). Following a month of meeting-and-conferring, Relator proposed adding eight individuals to the 11 then-being considered based on persons identified in the complaint and Boston Scientific's initial disclosures. (ECF No. 266-3, at 2–3). Come August 2018, Boston Scientific believed it had provided a "fulsome" list of custodians and that no one was "missing." (ECF No. 266-4, at 3). The parties engaged in more discussions and eventually agreed on 28 custodians. (ECF Nos. 266-5, 266-6, 266-7). Ultimately, this "fulsome" list of custodians included seven of the 10 persons identified in the initial disclosures; the only persons excluded were those with information related to Relator's termination from Boston

Scientific. (ECF No. 266-10, at 3). Of the seven newly-disclosed witnesses, Relator had earlier requested that Scovil and Gilkerson be named custodians; most importantly, *three of four* with information concerning FDA correspondence—Zurn, Breiter, and Huffman— were not listed as custodians. (ECF No. 292-1, at 7).

Boston Scientific notes that the newly-disclosed witnesses were not complete strangers to the discovery process. (ECF No. 291, at 6–20). As mentioned, Relator requested that Scovil and Gilkerson be included as custodians following a review of discovery produced in May 2018. Relator noticed but then cancelled depositions for Scovil, Gilkerson, and Smith. Relator noticed the deposition of Kayser, but the deposition did not proceed after Boston Scientific requested expenses for transporting the Europe-based Kayser to the United States. Boston Scientific designated Zurn as a corporate representative on two Rule 30(b)(6) topics, but Zurn was never deposed individually. Breiter and Huffman were never noticed for deposition.

With this in mind and following Matte's deposition, Relator wrote Boston Scientific indicating it believed it was prejudiced by Boston Scientific's failure to list Huffman in its initial disclosures or as a custodian. (ECF No. 266-8). Relator requested Huffman be designated a custodian; Boston Scientific produce any documents responsive to the ESI search terms negotiated as to all custodians; and permit a deposition of Huffman if necessary. (ECF No. 266-8). Boston Scientific did update its Rule 26(a)(1) disclosures, but it otherwise rebuffed Relator's requests. (ECF No. 266-10).

The instant motion followed once the Court indicated it would not be considered at the monthly status conference. The parties have submitted extensive briefing and exhibits

in connection with the motion and appeal. (ECF Nos. 283, 284, 291, 292, 298; *see also* ECF Nos. 266, 313, 318, 319, 320, 324). These submissions, along with the monthly status reports and other motion submissions, provide insight into the parties' discovery and litigation efforts to date.

## III.   ANALYSIS

### A.   Legal Standard

A party *must* identify "each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). These disclosures *must* be made at or within 14 days of the parties' Rule 26(f) conference unless otherwise provided by the court. Fed. R. Civ. P. 26(a)(1)(C). A party "*must* make its initial disclosures based on the information then reasonably available to it" and "is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Fed. R. Civ. P. 26(a)(1)(E) (emphasis added). A party *must* supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Initial disclosures are meant "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information." Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment. "Supplementations need not

be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment. The rule does not expect parties to disclose witnesses it does not intend to use. Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment. But as "case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use." *Id.*

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction," the court may: (A) order payment of reasonable expenses, including attorney's fees, caused by the failure; (B) inform the jury of the party's failure; and (C) impose other appropriate sanctions, including those described by Rule 37(b)(2)(A)(i)–(vi). Fed. R. Civ. P. 37(c)(1). Those sanctions include: (i) directing that the matters or facts be taken as established for purposes of the action; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or part; (iv) staying further proceedings until a court order is obeyed; (v) dismissing the action in whole or part; and (vi) rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A). The "district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "When fashioning a

remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.*; *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795–96 (D. Minn. 2000).

### B.  Consideration of Rule 26(a)(1)(A)

As Rule 26(a)(1) makes clear, initial disclosures are mandatory. Individuals likely to have discoverable information *must* be identified at the outset of the parties' discovery efforts. Fed. R. Civ. P. 26(a)(1)(A)(i), 26(a)(1)(C). These disclosures are made based on information reasonably available to the parties. Fed. R. Civ. P. 26(a)(1)(E). If someone is not identified in these initial disclosures, the initial disclosures must be amended if that "information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Of greatest import, Huffman was not included on Boston Scientific's initial disclosures despite being a witness central to Boston Scientific's communications with the FDA concerning the Cognis and Teligen devices. In its Rule 26(f) report, Boston Scientific indicated it would defend against Relator's claims by showing its "robust and complete disclosures of information to the FDA about its experiences with the Cognis and Teligen devices, including disclosures dating from both before and after [the] U.S. launch of the devices." Boston Scientific's communications with the FDA concerning the Cognis and Teligen devices have been the principal focus of this lawsuit since its inception, not only for Relator's claims, but, more importantly for the instant motion, to Boston Scientific's

defenses. Thus, given Huffman's central status to Boston Scientific's own defenses, she should have been included in Boston Scientific's initial disclosures. This conclusion is buttressed by Boston Scientific's actual addition of Huffman to its amended Rule 26 disclosures on the final day of discovery.

Boston Scientific argues that it had no affirmative obligation to amend its Rule 26 disclosures to add Huffman because she was known to Relator through the course of discovery. Boston Scientific notes that Huffman was referenced in "over 400" documents produced in May 2018. (ECF No. 266-10, at 3). Boston Scientific indicates that 30,000 documents in total were produced in May 2018, representing those documents produced to the government during its investigation. (ECF No. 291, at 2). Boston Scientific is essentially arguing that being referenced in approximately 1.34% to 1.66% of documents,[13] is enough for an opposing party to recognize immediately and irrefutably someone's central and critical role to the defenses at issue.[14] The Court disagrees. *E.g.*, *Taylor v. New York State Office for People with Dev. Disabilities*, 2016 WL 2858856, at *6 (N.D.N.Y. May 13, 2016) ("Defendants were not required to cull the document production and assume that plaintiff would call at trial any number of the individuals mentioned therein.").

Boston Scientific's own argument undercuts its position. If it should have been readily apparent to Relator from this initial production of 30,000 documents that Huffman

---

[13] Because Boston Scientific uses the "over 400" number, the Court's calculation is based on 401 to 499 documents.

[14] Ultimately, Huffman was referenced in approximately 1,344 documents produced. (ECF No. 266-10, at 3). Even had Boston Scientific's total production remained at 30,000 documents, Huffman was only referenced in 4.48% of them. In fact, by April 1, 2019, Boston Scientific had produced "approximately 48,000 documents," (ECF No. 291, at 3), thus lowering Huffman's references to about 2.8%.

was a person likely to have discoverable information to Boston Scientific's defenses, then it should have been *even more* apparent to Boston Scientific that Huffman was a person likely to have discoverable information related to its own defenses. This is because Boston Scientific, having then gone through the government investigation, was well aware of the persons likely to have discoverable information or should have been aware of such persons. In fact, the 30,000 documents produced to Relator was discovery Boston Scientific had already sifted through to produce to the government. If, having already generated and produced these 30,000 documents to the government before drafting its Rule 26 disclosures, Boston Scientific did not view Huffman as a person likely to have discoverable information sufficient to warrant inclusion on its initial disclosures, Relator should not be expected to make that conclusion independently.

Moreover, at the hearing before the undersigned on this motion, Boston Scientific's outside counsel asserted that Huffman's name did not come up in the government investigation but then later confirmed Huffman was the person responsible for Boston Scientific's communications with the FDA. (Tr. of Dec. 17, 2019 Mot. Hrg. 14:10–15:8, ECF No. 346; *see id.* 27:18–28:5). The Court is hard pressed to see how Relator is at fault for not pursuing Huffman earlier in discovery because her name appeared a number of times in thousands of documents produced when Boston Scientific claims it failed to discern her involvement until a revelation at discovery's end. In fully and faithfully responding to the government's investigation and Relator's discovery requests Boston Scientific should have recognized the importance of Huffman in the same manner it now insists Relator should have *obviously* realized her importance. Boston Scientific was in

position to know or should have known of Huffman's importance, but nonetheless omitted her from its list of initial disclosures and did not list her until the last day of discovery.

Boston Scientific also argues that it did not need to supplement its Rule 26 disclosures until the end of discovery because only then was it readily apparent what witnesses would be necessary for its defenses to Relator's claims. For similar reasons set forth in the preceding paragraphs, this argument is also unavailing. In addition, while "[s]upplementations need not be made as each new item of information is learned," it "should be made at appropriate intervals during the discovery period." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment. Supplementing on the final day of discovery is not supplementing at "appropriate intervals" when a party has the information and knew, or should have known, of such information's importance early in the litigation. As discussed already, Huffman is a witness central to Boston Scientific's communications with the FDA concerning the Cognis and Teligen devices, and those communications (or lack thereof) with the FDA are the lynchpin to the principal defense and claim at issue in this lawsuit. Boston Scientific cannot go through an entire governmental investigation and the entire discovery period, and then claim to have just realized which witnesses and what documents are important to the defenses and claims that have remained essentially static since the Rule 26(f) report.

Finally, Boston Scientific argues it did not need to disclose Huffman because it did not intend to use her to "*support* its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). This argument is undercut by Boston Scientific adding Huffman to its disclosure list. If Huffman does not support Boston Scientific's defenses, then she has no

purpose on its Rule 26(a) disclosures whatsoever. Further, Boston Scientific, in its Rule 26(f) report, indicated it would use its own disclosures to the FDA to defend against Relator's claims. Huffman was Boston Scientific's lead communicator to the FDA for the Cognis and Teligen devices for the 2008 approval through the 2009 recall. Her communications will be vital to Boston Scientific's defenses.

The Court finds no Rule 26 violation with respect to Scovil and Gilkerson. Scovil and Gilkerson were designated custodians and Relator should have all discovery from ESI search terms that these two possessed. While there is no explanation as to why the depositions of Scovil and Gilkerson were cancelled, Relator had the opportunity to depose them. As such, while Scovil and Gilkerson were not initially listed on Boston Scientific's Rule 26 disclosures, they were otherwise made known to Relator through the discovery process.

Smith, who was not a custodian, was otherwise made known to Relator through discovery because Relator noticed his deposition but ultimately cancelled it. The same is true for Kayser. Zurn poses a more difficult analysis as she was not noticed as an individual deponent, but was made available by Boston Scientific as a corporate witness related to adverse event analysis and reporting. A corporate witness testifying is different than an individual deponent, but Relator had the opportunity to dive deeper into her font of knowledge for answering such questions.

Breiter, like Huffman, was not noticed for a deposition and the record does not indicate he was otherwise made known to Relator through discovery. The analysis applies

similarly. As such, the late disclosures of Breiter, like Huffman, constitutes a Rule 26 violation.

### C. The Violations Harmed Relator and Had No Substantial Justification

Failure to provide witness information under Rule 26(a) or (e) prevents a party from using that discovery unless the failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the non-complying party to prove harmlessness or justification. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018) (quoting *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 20–21 (1st Cir. 2001)); *Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, 2019 WL 302514, at *3 (W. D. Mo. Jan. 23, 2019).

As concluded, Huffman is a central witness. She served as the fulcrum between Boston Scientific and the FDA. Likewise, Breiter served in some capacity related to FDA communications. The Court, however, focuses more on Huffman given her important status to the case. Without Huffman's information, Boston Scientific would face difficult challenges to its defenses, and Relator would not have important, perhaps critical, support for his case. Huffman's exclusion from Boston Scientific's Rule 26 disclosures until the end of discovery affected discovery significantly. By not including Huffman in its initial disclosures, Boston Scientific was able to shield her from nearly all of Relator's discovery because Boston Scientific's initial disclosures shaped Relator's subsequent inquires. And contrary to Boston Scientific's arguments, Relator was not naïve or misplaced in relying upon Boston Scientific's Rule 26 disclosures to shape the discovery discussions because they serve as the natural jumping point for such efforts. Fed. R. Civ. P. 26(a) advisory

committee's note to 1993 amendment (discussing that initial disclosures "accelerate the exchange of basic information about the case"). Boston Scientific, through its incomplete initial disclosures, shaped the entire course of discovery in this matter, from document requests and interrogatories to depositions. Relator also used Boston Scientific's initial disclosures to negotiate the list of custodians and other matters. Boston Scientific cannot set the parameters of discovery via its initial disclosures only to change those very parameters at the end of discovery in the way it did here. Boston Scientific's actions prejudiced Relator.

The initial disclosures and subsequent initial discovery production in this matter guided the ESI custodian discussions which then set boundaries for discovery in this matter. Boston Scientific cannot fault Relator for not knowing everything about Boston Scientific's internal workings when it failed to disclose those internal workings in sufficient detail. Boston Scientific's Rule 26 disclosures shaped the contours of Relator's subsequent discovery efforts. To argue otherwise rejects the central tenets of Rule 26 and defies common sense. Thus, Boston Scientific's withholding of Huffman and Breiter from its Rule 26 disclosures was not harmless.

Boston Scientific's failure to provide witness information in its Rule 26 disclosures until the final hours of discovery is not justified, much less *substantially* justified. As discussed above, Boston Scientific has been defending its conduct since the government began its investigation as to intervention. While the lawsuit may have shifted from initial government investigation to the operative complaint that is in place today, it has not shifted from the point Boston Scientific completed its Rule 26(f) report. For Boston Scientific to

assert that it required Relator to finish his depositions before it knew what witnesses it would rely on does not make sense, particularly in light of the Rule 26(f) report that showcases exactly the same defense Boston Scientific relies upon now. Moreover, Boston Scientific operates in a heavily regulated medical device industry and, as such, has compliance departments in contact with federal agencies like the FDA. For Boston Scientific to claim it did not know which of its own current or former employees would be important in a case revolving around its communications with the FDA strains credulity. The Court is unpersuaded that Boston Scientific did not have a full grasp of its factual defenses to Relator's claims until the close of discovery. As such, Boston Scientific was not substantially justified in withholding Huffman and Breiter from its Rule 26 disclosures until the final day of discovery.

Moreover, Boston Scientific is a sophisticated global medical solution company and its actions, including litigation, must be assigned equal sophistication as opposed to accident or happenstance. Boston Scientific had formulated its defense to Relator's claims by the time it filed the Rule 26(f) report. This case has always depended on differences in legal opinion as to what had to be reported to the FDA, with Relator claiming Boston Scientific kept the FDA in the dark and Boston Scientific asserting it complied with all reporting requirements. The Court is not convinced by Boston Scientific's argument in support of its last-minute Rule 26(a) disclosure amendments.

Boston Scientific also defends its actions by pointing at Relator's conduct in discovery. (ECF No. 291). True, the Court has admonished both parties' conduct throughout discovery. (Oct. 16 Order; *see* ECF No. 319). Boston Scientific points out in

great detail references to newly-disclosed witnesses in discovery, (ECF No. 291, at 6–20), seemingly to demonstrate what it deems as Relator's lack of diligence through discovery to decide on its own who the important custodians or witnesses may be. This misses the point. The Rule 26(a)(1) inquiry is into Boston Scientific and what Boston Scientific knew and knows, not what Relator should have learned or deduced. Rule 26(a) is inward looking and focuses on the disclosing party. Thus, it is Boston Scientific's conduct that controls under the facts of this case, rather than Relator's or anyone else's.

Nor can Rule 26(a)(1) be ignored merely because, after all discovery is done, one can point to a random document here or there to show the information was made known to the other party during the discovery process. Fed. R. Civ. P. 26(e)(1)(A). If the Court were to accept Boston Scientific's reading of Rule 26(a)(1) and bring it to the logical end, a litigant could name whoever they wanted in their initial disclosures so long as, come the end of discovery, they could point to some scattered documents or other discovery that was provided. This undermines the purpose and intent of Rule 26(a)(1). The purpose of Rule 26(a), as with all the Rules, is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. If Rule 26(a) cannot jump-start the parties' discovery efforts and direct them to those likely to have discovery, then initial disclosures would be rendered meaningless.

The problematic nature of the incomplete and unsupplemented Rule 26(a)(1) disclosures is showcased by the fact that Relator had to move for a violation of Rule 26(a)(1) rather than some other rule. It would be infinitely easier for the Court to analyze a violation of one of Relator's discovery requests or a previous Court order on a motion to

compel rather than a somewhat esoteric Rule 26(a)(1) violation. There is no dispute that Huffman, Breiter, and the other newly-disclosed witnesses are individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). There is no dispute that Huffman, Breiter, and the other newly-disclosed witnesses hold information relevant to both parties' claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). It follows then that, but for the custodian list, discovery would have been obtained from Huffman, Breiter, and the other newly-disclosed witnesses. Boston Scientific's stunted custodian list was effective in limiting the universe of available information from which the parties gathered discovery for this lawsuit. Boston Scientific's disclosures in the literal waning hours of discovery was harmful and prejudicial to Relator.

The atmospheric fees and costs of contemporary litigation, involving enormous caches of data, demand that parties designate appropriate custodians in order to generate manageable groupings of persons from whom discovery can be justly and efficiently sought. This lowers fees and costs, and increases efficiency consistent with Rule 26(b)(1). Access to justice requires no less. But here, the whole of discovery was stained. The laborious process of meeting and conferring just to determine who would be on the custodian list meant that no discovery—outside of that already developed in the course of the government investigation—was produced until approximately nine months after discovery began and less than seven remained. The custodian negotiation effectively used up half of the available discovery period. To assert that the initial disclosures had no carry-on effect ignores this. Boston Scientific's Rule 26(a)(1) disclosure failures were harmful and prejudicial to Relator.

## D. Sanction

"Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of sanctions." *Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004).

As noted, Rule 37 provides remedies for Rule 26(a) violations "on motion and after giving an opportunity to be heard." Fed. R. Civ. P. 37(c)(1); *Vanderberg*, 906 F.3d at 705. Fed. R. Civ. P. 37(c)(1); *Vanderberg*, 906 F.3d at 705. Here, the parties have submitted several rounds of briefing related to the sanctions motion and presented additional argument at the motions hearing, opening the full panoply of remedies to the Court. These remedies, which can be imposed in lieu of automatic exclusion or supplemental to it, include: (1) ordering payment of reasonable expenses, including attorney's fees, caused by the failure; (2) informing the jury of the party's failure; (3) directing that the matters or facts be taken as established for purposes of the action; (4) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (5) striking pleadings in whole or part; (6) staying further proceedings until a court order is obeyed; (7) dismissing the action in whole or part; and (8) rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 37(b)(2)(A). The court should seek to achieve substantial justice when considering a Rule 26(a) violation. *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002) (citing *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993)). The remedy should be tailored for the particular circumstances of the case. *Wegener*, 527 F.3d at 692.

### 1.    Additional Discovery

Here, after considering the Rule 26 violations, Boston Scientific's discovery conduct, the parties' overall discovery efforts, the importance of the withheld discovery, and the remedies requested by Relator, the Court concludes that an appropriate sanction is for Boston Scientific to provide discovery from Huffman and Breiter. To achieve this sanction, Boston Scientific must produce documents from Huffman and Breiter in the same manner it produced for the previously-agreed-upon custodians. And while the Court found no discrete Rule 26(a)(1) violation relating to Zurn, the conduct surrounding Zurn is veiled by the obfuscation accompanying Huffman and Breiter. Thus, to give full effect to the sanction as to Huffman and Breiter, discovery shall also be produced as to Zurn in the same manner.

Boston Scientific shall produce every responsive document that hits on the parties' ESI search terms for Huffman, Breiter, and Zurn. This discovery shall be produced within 14 days of this Order. Relator will then have 14 days after this discovery is produced to review the discovery to decide if depositions will be necessary. If Relator would like to depose Huffman, Breiter, or Zurn, he may do so at a time convenient to Relator's counsel within 45 days of this Order. Boston Scientific shall make its counsel and Zurn available for whichever date, time slot, and location Relator reasonably selects. Likewise, while Breiter and Huffman are former employees, Boston Scientific shall use its best efforts to produce Huffman and Breiter for depositions and shall make its counsel available for

whichever dates, time slots, and locations Relator reasonably selects. The deposition questioning may last up to 8 hours for each witness.[15]

### 2. No Exclusion or Adverse Inference at This Time

While "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)," *Vanderberg*, 906 F.3d at 705, the Court may impose other sanctions "[i]n addition to or instead of this sanction," Fed. R. Civ. P. 37(c)(1). Again, after considering the Rule 26 violations, Boston Scientific's discovery conduct, the parties' overall discovery efforts, the importance of the withheld discovery, and the remedies requested by Relator, the Court finds exclusion would be disproportional given the other sanctions already imposed. Relator will have an opportunity to depose some of the newly-disclosed witnesses and develop the facts he was prevented from developing during the normal course of discovery. Additionally, the self-executing sanction of Rule 26(a) is potentially ineffective here. Exclusion of the newly-disclosed witnesses and information they possess could well further Boston Scientific's Rule 26 violation rather than remedy it. While Boston Scientific's defenses could be impacted by excluding the newly-disclosed witnesses, Relator could feel the greater brunt of that sanction because he has the burden of proving his claims relating to Boston Scientific's FDA communications, or lack thereof. Given the nature of Relator's claims, it is important for Relator to have access to the full landscape of Boston Scientific's FDA communications. Automatic

---

[15] The deposition time limit prescribed by the pretrial scheduling order (100 total hours) does not limit Relator's ability to depose these witnesses.

exclusion does not redress appropriately the harms caused by Boston Scientific's violations as compared with, or in addition to, the other sanctions ordered herein.

The Court has considered Relator's adverse inference sanction request but finds it unnecessary at this time given the sanctions ordered. So long as Boston Scientific complies with its obligations outlined here, the parties should be returned to an equal footing in advance of summary judgment and trial, and the taint of Boston Scientific's Rule 26 violation will have been cleansed. The Court may, however, revisit this decision should discovery or other developments deem it necessary.

### 3. Costs and Attorney's Fees

Finally, Relator has requested fees for the deposition of Matte, discovery borne from this Order, and costs for this motion. The Court will award Relator all his reasonable costs and fees for having to bring the sanctions motion, but will not award him costs and fees as relate to past or future discovery. *See* Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 37(b)(2)(A). As the Court has found, Boston Scientific's failure to fulfill its obligations under Rule 26(a)(1), with the adverse impact that had throughout discovery in this matter, was not substantially justified. Boston Scientific is hereby ordered to pay all Relator's reasonable costs and attorney's fees related to briefing and arguing the sanctions motion. The parties are first directed to attempt to resolve such payment without Court intervention. If that fails, however, Relator shall submit an affidavit of costs and attorney's fees in connection with this motion. Boston Scientific may respond to the reasonableness of the amount of costs and attorney's fees sought.

## IV.    CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Relator's Motion for Sanctions, (ECF No. 281), is **GRANTED IN PART and DENIED IN PART** as discussed herein.

Dated: February 28, 2020                                    _____*s/ Tony N. Leung*_____
                                                            Tony N. Leung
                                                            United States Magistrate Judge
                                                            District of Minnesota

                                                            *Higgins v. Boston Scientific*
                                                            Case No. 11-cv-2453 (JNE/TNL)